----------o----------

THE JEFFERSONVILLE, MADISON, AND INDIANAPOLIS RAILROAD COMPANY *v.* IRVIN ET AL.

PRACTICE.—*Waiver of Reply.*—Where the record shows the filing of a demurrer to certain paragraphs of an answer, but does not show any ruling of the court thereon, or that any reply was filed, no question arises as to the sufficiency of the answer, and the presumption is that the defendant waived a reply.

BILL OF LADING.—*Assignment of.*—The delivery of a bill of lading transfers the title to the property. A formal assignment is not necessary.

SAME.—*Pleading.*—*Immaterial Averments.*—In a complaint upon a bill of lading given to the consignor, which contains, in addition to the usual provisions, a clause providing that the goods shall be delivered on "presentation of duplicate hereof," it is unnecessary to aver the reasons that influenced, and purposes that controlled, the shippers or the carrier in inserting the clause, and such averments do not add anything to the legal effect of the bill of lading.

SAME.—*Effect of Bill of Lading Containing Provision for Delivery of Goods on Presentation of Duplicate.*—A bill of lading containing a provision that the goods are to be delivered on "presentation of duplicate hereof," establishes

the fact that the consignor is the owner of the goods, and if the carrier delivers the goods to the consignee without the presentation of any bill of lading, the carrier becomes liable to the consignor.

:SAME.—If such condition had not been in the bill of lading, the title to the goods would have vested in the consignee on their delivery to the carrier, but being there, the property remained in the consignor until the goods were paid for by the consignee.

From the. Bartholomew Common Pleas.

*S. Stansifer*, for appellant.

*R. Hill* and *G. W. Richardson*, for appellees.

BUSKIRK, J.—When this case was in this court before, the judgment of the court below was reversed, because a demurrer had been sustained to the complaint. When the cause was remanded, one of the plaintiffs, Benjamin F. Jones, having disposed of his interest in the claim to Thomas and James W. Gaff, and the other plaintiff, William McEwen, having been adjudged a bankrupt, his assignees and the said Gaffs were substituted as plaintiffs, and in all other respects the complaint remains the same as it originally stood. A demurrer to the complaint was overruled, and the appellant excepted. An answer, consisting of four paragraphs, was filed; one paragraph, being in denial of the instrument sued on, was sworn to. The record shows that a demurrer was filed to the third and fourth paragraphs, but it does not show any ruling of the court thereon, nor does it show that any reply was filed. No question arises as to the sufficiency of the answer, and the presumption is that the appellant waived a reply to the answer.

The cause was submitted to the court for trial, and resulted in a finding for the appellees. New trial refused, and judgment on finding.

The sufficiency of the complaint and of the evidence to sustain the finding are the only questions presented for our decision.

The complaint is as follows: "On the 20th day of August, 1867, H. W. Comstock & Co., of the city of Indianapolis, entered into a contract with B. F. Jones & Co. for the pur-

chase of eight hundred barrels of flour, known as B. F. Jones
& Co.'s XXXX, at eleven dollars per barrel; the flour to be
delivered on cars at Columbus, in Bartholomew county, Indi-
ana, and to be paid for on receipt of the bills of lading; that
under and pursuant to said contract and agreement between
said parties, said B. F. Jones & Co. delivered to defend-
ant, who is a common carrier for hire, and whose line and
route extends and runs from Jeffersonville, in said State, *via*
Columbus, to the city of Indianapolis, two hundred barrels
of their said flour, at the said city of Columbus, which was
placed on the cars of the defendant to be carried and ship-
ped for said B. F. Jones & Co., the shippers and owners
thereof, to said city of Indianapolis; that said H. W. Com-
stock & Co. had no interest in, or right to, said flour until
the purchase-money therefor was paid; that at the time of
placing said flour on defendant's cars, to be shipped as afore-
said, said firm of H. W. Comstock & Co. was wholly and
notoriously insolvent; and said B. F. Jones & Co., as such
owners and shippers of said flour, to retain and hold the
custody and control until the purchase-money therefor should
be fully paid, at the time they delivered said flour to defend-
ant, as aforesaid, requested the station agent of said defend-
ant, at said city of Columbus, to make and execute a bill of
lading therefor, containing, among the usual clauses, that the
said flour should be delivered on presentation of the dupli-
cate; and on the delivery of said flour to defendant as afore-
said, its said agent, under and in pursuance of the request of
said B. F. Jones & Co. as aforesaid, with intention to secure
the control and possession of said flour in said B. F. Jones &
Co. as aforesaid, until the purchase-money for said flour should
be paid, made and delivered a bill of lading therefor to said
B. F. Jones & Co. as the owners and shippers thereof, hav-
ing the control and custody of the same as aforesaid, wherein
defendant agreed to deliver the said flour without unneces-
sary delay, in like good order to H. W. Comstock & Co., at
Indianapolis, in said State, on payment of freight, as per

tariff of said company, and presentation of duplicate thereof, which bill of lading is as follows :

"'COLUMBUS, August 24th, 1867.

"'Received of B. F. Jones & Co., in apparent good order, except as below specified, to be transported on the J., M. & I. Railroad, the under named articles, marked as per margin, which we agree to deliver, without unnecessary delay, in like good order, to H. W. Comstock & Co., at the regular station at Indianapolis, on payment of freight as per tariff of said company, and presentation of duplicate hereof.

| MARKS. | ARTICLES. | WEIGHT. |
|---|---|---|
| B. F. Jones & Co., | 200 barrels of flour. | |
| | On cars | |
| City Mills. | No. 3,017—672. | |

"'J. R. WOODFILL.'

"And said defendant, by its said agent, made and delivered to said B. F. Jones & Co. its second bill of lading, which its said officer marked in writing across the face of the same, 'duplicate,' but which, in fact, was not a duplicate, inasmuch as the clause, 'and presentation of duplicate hereof,' is left out by mistake of said agent, which will be seen by reference to said original bill of lading and said second bill of lading, marked duplicate, a copy of which is filed, marked 'B,' said defendant intending by said clause, 'and presentation of duplicate hereof,' in said original bill of lading, to require and bind said defendant to hold said flour until said Comstock & Co., or other person, should lawfully and properly present said duplicate bill of lading therefor, and not otherwise deliver the said flour to said Comstock & Co., or any other person ; and on said 24th day of August, 1867, before the delivery of said flour at said city of Indianapolis, said B. F. Jones & Co. made and drew their draft on said H. W. Comstock & Co., of Indianapolis, for the sum of two thousand two hundred dollars, the amount of said flour consigned as aforesaid, and on account thereof, payable at Indiana Banking Company's Bank, at said city of Indianapolis, and immediately produced their said draft, with said intended

duplicate bill of lading for said flour attached thereto, at the banking house of plaintiffs, who were doing a banking business as aforesaid, for the purpose of negotiating the same, who then and there, in good faith, discounted the same and paid value therefor to said B. F. Jones & Co., on the faith of said bill of lading, the plaintiffs knowing the form, character, and contents of said original bill of lading, which was then and there, as part of said transaction, endorsed and delivered by said B. F. Jones & Co. to plaintiffs, as collateral security for the payment thereof, and on the 24th day of August, 1867, said draft, with said duplicate bill of lading attached, was placed at said Indiana Banking Company's Bank, at the city of Indianapolis, for collection, who, by their agent W. W. Woolen, cashier, presented said draft with said duplicate attached, on same day, to said H. W. Comstock & Co., who, on the 24th day of August, 1867, accepted it by endorsement across the face thereof, but failed and refused to pay the same, or any part thereof; and the same was duly protested for non-payment on the 27th of August, 1867; that said H. W. Comstock & Co. were at the time of said shipment wholly insolvent, and have been continuously since, and are now wholly unable to pay said draft, or any portion thereof, and the same is wholly unpaid. Plaintiffs aver that in a reasonable time, to wit, on the 28th day of August, 1867, plaintiffs produced their said original and duplicate bills of lading for said flour at the office of defendant, at the said city of Indianapolis, and demanded said flour on the same, but defendant failed and refused to deliver the same to plaintiffs, or any part thereof; that defendant prior thereto, to wit, on the 26th of August, 1867, surrendered and delivered all of said flour to said H. W. Comstock & Co., without presentation of said duplicate or original bill of lading, or other authority, and in violation of said bill of lading, who on the same day forwarded the same beyond the limits of the State of Indiana; that said Comstock & Co. did not produce to defendant the original or duplicate bill of lading, or other authority to obtain said flour, and never had possession

thereof; but without the production thereof, said defendant delivered and surrendered said flour to said Comstock & Co. without any authority whatever; that said Comstock & Co. were not the owners of the flour, or entitled to the possession thereof; that it was of the value of three thousand two hundred dollars. Judgment demanded for four thousand dollars, with other proper relief."

When this case was here before, it received a very full and careful consideration. See *McEwen* v. *The Jeffersonville, etc., R. R. Co.*, 33 Ind. 368. The only question then involved was, whether the complaint was sufficient, and it was held to be good. The complaint in the present action is the same, except a change of plaintiffs, rendered necessary by the assignment on the part of one of the original plaintiffs and the bankruptcy of the other. We are asked to overrule the former ruling of this court. We have given the subject very thoughtful consideration, and are entirely satisfied with the ruling of the court upon the clause of the bill of lading which provides for the delivery "on presentation of duplicate hereof." And in support of that ruling we refer to the following additional authorities: Angell on Carriers, sec. 324; *McEntee* v. *The New Jersey Steamboat Co.*, 45 N. Y. 34; *Claflin* v. *B. & L. R. R. Co.*, 7 Allen, 341; *Conard* v. *The Atlantic Ins. Co.*, 1 Pet. 446; *The Cayuga Co. National Bank* v. *Daniels*, 47 N. Y. 631; *Bailey* v. *Hudson River R. R. Co.*, 49 N. Y. 70. The three New York cases have been decided since the former decision in this cause, and fully sustain the former ruling of this court.

In the former opinion of this court, something is said in reference to the legal effect of the clause in the bill of lading providing for the payment of freight. Inasmuch as no question in reference to the payment of freight arises in the record, we do not feel called upon to express any opinion, either of approval or disapproval of that portion of the opinion.

In our opinion, the court committed no error in overruling the demurrer to the complaint.

We next inquire whether the court erred in overruling the motion for a new trial.

In support of the motion for a new trial, and to show that the court erred in overruling it, it is insisted that there is no evidence tending to show a transfer of the bill of lading to McEwen & Jones. They had possession of it, and the draft which was drawn against it, and these facts made at least a *prima facie* case for the plaintiffs. See authorities above cited. Also, *Gibson* v. *Stevens*, 8 How. 384, 400. In *The Bank of Rochester* v. *Jones*, 4 N. Y. 505, referring to *Nathans* v. *Giles*, 5 Taunt. 558, it is said: "The property in a cargo for which the master of a ship has signed bills of lading, may be transferred by delivery, without endorsement of the bill of lading." See, also, *Allen* v. *Williams*, 12 Pick. 297.

The case in 8 How. and the cases in 47 and 49 N. Y., *supra*, fully establish the proposition that the delivery of the bill of lading transfers the title to the property. A formal assignment is not necessary. In the case in 47 N. Y., *supra*, it was held, that the delivery of a bill of lading to a bank, for the purpose of securing the payment of drafts drawn by the consignor upon the consignee, and discounted by the bank, is sufficient to transfer the title to the property covered by the bill of lading, subject to be divested by the acceptance and payment of the drafts. In our judgment, the delivery of the bill of lading to, and the payment of the draft by, McEwen & Jones vested in them the title to the flour; and it was not divested by the acceptance of the draft by Comstock & Co., they not having paid the same.

Finally, it is insisted that there was no evidence to sustain the averments of the complaint touching the reasons that influenced, and purposes that controlled, the shippers or the carrier in inserting in the bill of lading the clause, "upon presentation of the duplicate hereof."

In our opinion, such averments were unnecessary, and the appellees were not bound to prove them. They did not add anything to the legal effect of the bill of lading. The bill of

lading fixes and determines the liability of the appellant. The agreement on her part to deliver the flour to the consignee, "upon presentation of the duplicate hereof," established the fact that the consignors were the owners of the flour; and when she delivered the flour without the presentation of any bill of lading, she became liable to the consignors, without reference to the reasons which induced the consignors to have such clause inserted. If such condition had not been in the bill of lading, the title to the flour would have vested in Comstock & Co. on the delivery to the carrier; but being there, the property remained in the consignors until the flour was paid for by the consignee.

We think there was no error in overruling the motion for a new trial.

The judgment is affirmed, with costs.