## WELLINGTON P. MYNARD AND WILLIAM F. BLANK, RESPONDENTS, *v.* THE SYRACUSE, BINGHAMTON AND NEW YORK RAILROAD COMPANY, APPELLANT.

*Common carrier — right of, to make a special contract for transportation of merchandise — can exempt himself, by contract, from liability for any degree of negligence — Federal and State courts — Co-ordinate jurisdiction — conflict in decisions of.*

The defendants carried cattle over their road for the plaintiffs, at less than one-half the usual rate, under a special contract with the plaintiffs for exemption from liability, as follows: "In consideration.that the said company have, at our request, agreed to transport said stock at said reduced rate, we do hereby agree to, and do hereby release and discharge the said company from all claims, demands and liabilities, of every kind and character whatsoever, for or on account of, or connected with, any damage or injury to, or loss of said stock, or any portion thereof, from whatsoever cause arising." The cattle were injured by reason of the negligence of an employe of the defendants, in leaving the door of the car, in which stock were, open.

*Held,* 1. That the agreement was on valid consideration, and embraced an injury through negligence, which was the cause of damage in this case.

2. That a common carrier in this State can limit his liability by contract even for gross negligence.

3. That although in *Lockwood's Case* (17 Wall., 357) the law is held otherwise, still, on this subject, the federal and State courts have co-ordinate jurisdiction, and the State courts can adhere to their own conclusions and decisions.

APPEAL by the defendant from the judgment of the County Court of Cortland county, affirming a judgment rendered by a justice of the peace, in favor of the plaintiffs.

The action was brought to recover the value of a steer, alleged to have been injured and lost through the defendant's negligence, when being transported over its road. The loss occurred by reason of the omission of the defendant's employes to fasten the door of one of the cars, in which the plaintiffs' cattle were being conveyed. The cattle were carried by the company at less than one-half the usual rate, under a special contract with the plaintiffs for exemption from liability, as follows:

"In consideration that the said company have, at our request, agreed to transport said stock at said reduced rate, we do hereby agree to, and do hereby release and discharge the said company

from all claims, demands and liabilities of every kind and character whatsoever, for or on account of, or connected with any damage or injury to, or the loss of said stock or any portion thereof, from whatsoever cause arising."

The justice held that the company was not relieved by the agreement, from liability growing out of the negligence of its servants; and rendered judgment in favor of the plaintiffs, which judgment was affirmed, on appeal, by the County Court. The case is in this court on appeal from such judgment of affirmance.

*Ruger & Jenney*, for the appellant.

*W. H. & L. E. Warren*, for the respondents.

BOCKES, J. :

The plaintiffs' agreement, exempting the company from liability, was on valid consideration, and embraced the cause of injury and damage for which the recovery was allowed. Of this, I think there can be no question. The consideration of the agreement for exemption, was the greatly reduced rate accepted for the transportation of the property; and the exemption stipulated for was as broad and comprehensive as could well be expressed. By it the company was discharged "from all claims, demands and liabilities of every kind and character whatsoever" growing out of the transportation of the stock, "*from whatsoever cause arising.*" General terms of exemption, as at the owner's risk, have been held, in some cases, not to embrace injuries and damage resulting from the negligence and misconduct of the carrier (4 Keyes, 108), for the reason that it would not be presumed that the parties intended to contract for such exemption, and this, although the terms employed were broad enough in their general import for that purpose. (But see *McCauley's Case*, 4 Eng. Rep. [Moak's Notes], 218; 8 Q. B., 57 [L. R.].) Such narrow construction, however, grew out of a repugnance to recognize any right whatever in the carrier, to limit his common-law liability. But, after such right was established by the decisions of the court, the terms of contracts with carriers, for exemption from liability, were construed according to their fair import, the same as when

employed in contracts with parties, other than common car-
riers. In *Bissel's Case* (25 N. Y., 442) the contract exempted
all claims for damages for "*injury from whatever cause.*" This
was held by the Court of Appeals to protect the company against
negligence. True, the notice on the back of the ticket, delivered
with the contract, was to the effect that the company should not be
liable under any circumstances, whether of negligence of its agents
or otherwise; but it will be seen on examination of the opinions of
the judges in this case, that the exemption of injuries "*from what-
ever cause*" was deemed sufficiently specific and comprehensive to
cover all injuries from negligence, for which the company would be
otherwise liable. In *Chipindale's Case* (7 Eng. Law and Eq. R.,
395), the contract for exemption was, that the company should not
be liable "for any injury or damage however caused." These
terms were held to embrace an injury to live stock through negli-
gence. In *Carr's Case* (14 Eng. Law and Eq. R., 340), the action
was grounded on negligence while carrying a horse under a con-
tract for exemption like the one last cited. The court held in
accordance with the former decisions; and in *McCauley's Case*
(*supra*), it was held that "at his own risk," must be taken to
exclude all liability on the part of the company for any negli-
gence for which it otherwise would have been liable. This con-
struction, however, is more liberal than any adopted in this
State, barring *Steer's Case* (57 N. Y., 1), which seems to uphold a
similar construction. This subject is now under statute regula-
tion in England. (See act of Parliament of 1854, known as the
Railway and Canal Traffic Act.) The stipulation in the case at
bar is very broad and comprehensive in its terms. It provides for
exemption from all claims, demands and liabilities of every kind
and character, growing out of the transportation of the property,
from whatsoever cause arising. Thus, according to its fair and
necessary import, it embraces every description of accident, casu-
alty and risk, attending the carrying of the property over the
defendant's road. It embraces within its fair import every injury
which the property might receive, however occasioned, while
being transported to the place of destination, except, perhaps,
those resulting from willful acts of violence. I am of the opinion,
therefore, that the learned county judge was in error in holding

that the contract for exemption did not embrace an injury through negligence; which was the cause of the damage in this case.

The remaining question is, whether a common carrier can lawfully stipulate for exemption from liability for the negligence of his agents and servants. This question is answered in the negative by the decision in *Lockwood's Case* (17 Wallace, 357). The subject was then fully examined by Mr. Justice BRADLEY, both on principle and authority. The cases bearing on it in England as well as in this country are there cited, and many of them are commented on by that learned judge; and it may be safely asserted that the subject is there completely exhausted; although a difference of opinion may remain as to the correctness of the conclusion declared in that case. The decisions in the courts of this State to that time (1873), which had been then reported, then received particular attention; and it was conceded that, by the settled laws of this State, a common carrier might exonerate himself by special contract, from liability, even for gross negligence; but the court held that on a question of general commercial law the federal courts, in administering justice, had equal and co-ordinate jurisdiction with the courts of the State of New York; and the law, as declared by the Court of Appeals in this State, on the question here under discussion, was repudiated. If we were to rest on the authority of this decision, the judgment here appealed from should be affirmed. But the Court of Appeals in this State, to whose decisions we must conform our action, does not recognize the case cited as binding authority, and exercises its right, on this question of commercial law, as a court of co-ordinate jurisdiction with the federal courts, to adhere to its own repeated decisions. The rule laid down and adhered to by the Court of Appeals is to the effect that a common carrier may, by special contract, limit his common-law liability so as fully to protect himself from responsibility for the negligence of his agents and servants (51 N. Y., 61), and this even to the extent of protection against their gross negligence. In the case last cited (*Cragin's Case*), Judge EARL says: "In this State it is well settled that a carrier may, by express contract, exempt himself from liability for damages resulting from any degree of negligence on the part of his servants, agents and employes;" and he adds: "In

some of the States it is held that the carrier cannot be exempted from responsibility for gross negligence. But so long as the freighter can insist that the carrier shall carry his property under the common-law responsibility, there can be no reason, founded in justice, convenience or public policy, why he may not voluntarily enter into a contract, founded upon sufficient consideration, exempting the carrier from all responsibility for any degree of negligence, whether it be gross or slight." For aught that appears, these remarks received the approval of every member of the court. This case was not referred to by Mr. Justice BRADLEY in *Lockwood's Case;* perhaps it was not reported when that case was argued. This rule has been declared in very many cases in the Court of Appeals. Among those wherein this subject has been considered in that court are the following: 4 Keyes, 108; 8 N. Y., 375; 24 id., 196, 206, 222; 25 id., 442; 49 id., 263; 51 id., 61; id., 166; 57 id., 1. In the citation of authorities on this question, the very recent case of *Nicholas* v. *N. Y. C. and H. R. R. R. Co.* (11 N. Y. S. C. [4 Hun], 327), in this court, should not be passed over without notice. Mr. Justice SMITH there remarks, that if the Supreme Court of the United States is right in the view as stated in one of the conclusions in the case of Lockwood, that it is not just and reasonable in the eye of the law for a common carrier to stipulate for exemption from responsibility for the negligence of himself or his servants, the law can now only be changed in this State by an act of the legislature, as it has been in England by an act of Parliament. The rule so repeatedly declared in the Court of Appeals must be deemed to be the law in this State, until that court shall declare a different rule, or until changed by legislation; even although it may be in conflict with the law as declared in the federal courts. On this question of commercial law, the federal courts and the State courts have co-ordinate jurisdiction, hence the latter are at liberty to adhere to their own conclusions. Being subordinate to the Court of Appeals, we are bound by its action. It follows therefore, that the judgment now under review, is erroneous, inasmuch as it appears that the company contracted for exemption from responsibility for the injury and damage for which the recovery was allowed, as it lawfully might.

The judgment of the County Court and of the justice must be reversed, with costs.

BOARDMAN, J., concurred.

LEARNED, P. J. (dissenting):

I cannot agree with the conclusion of my brethren.

If the contract signed · by the plaintiffs is to be construed literally and without any qualification, it would seem that the defendants might open the car doors and let all the cattle loose, without incurring any liability. For the language is that the defendants are released from demands of every kind on account of the *loss of stock, from whatsoever cause arising.* Although our courts have gone far in permitting common carriers to avoid liability, yet I am not aware that an entire freedom from any obligation to the bailor has yet been sanctioned. " If it be desired," says Judge JOHNSON, " that a clause shall cover losses by negligence, it is not too much to say that the purpose must be clearly expressed." (*Magnin* v. *Dinsmore*, 56 N. Y., 168.) For these contracts are practically, as the judge there says, under the control of the carriers. And any one can understand the meaning of the pretended reduced rate.

In the case just cited, it is said that the contract will not be deemed to except the losses occasioned by the carrier's negligence, unless that be expressly stipulated. This must mean not that the general words of exception shall be used, but that the parties shall expressly except any liability for negligence. And for the support of this doctrine the learned judge cites *Steinweg* v. *Erie Railway Co.* (43 N. Y., 123), and several other recent cases in the Court of Appeals. *Steinweg* v. *Erie Railway Co.* holds that a release of a carrier " from damage or loss to any article from, or by fire or explosion of any kind," does not release him from damages resulting from fire, by his own · negligence. So, too, in the case of *Guillaume* v. *H. and A. R. R. Co.* (42 N. Y., 212), a contract of exemption, full as broad as that in the present case was held not to apply to gross negligence.

It is not to be thought, without express language to that effect, that the carrier is to be released from damages occasioned by his actual wrong-doing.

This subject is very carefully examined in *Railroad Company* v. *Lockwood* (17 Wall., 357). In that case it was held that the carrier could not stipulate for exemption from responsibility for the negligence of himself and his servants. That case arose in this State, and the cases here decided are carefully reviewed in the elaborate opinion. And, while the result is, perhaps, in conflict with some decisions of our courts, yet it is said in that opinion, just as is held in the cases above mentioned, that a contract, general in its terms, has never been held, even in this State, to exonerate the carrier from the effects of his own negligence. And, in the present case, as the carrier did not expressly contract for the privilege of neglecting his duty, he should pay the damage occasioned by such neglect.

The judgment should be affirmed with costs.

Judgment of County Court and of Justice's Court reversed.