FLOYD BAILEY et al., Respondents, *v.* THE HUDSON RIVER RAILROAD COMPANY, Appellant.

If A. has property upon which he has received advances from B., under an agreement that he will ship it to B. to be sold to pay the advances, or to pay any indebtedness; he may or may not comply with this contract. He may ship to C. or to B. upon conditions, but if he ships to B. in pursuance of his contract the title vests in B. upon the shipment. The highest evidence that he has so shipped is the consignment and unconditional delivery to B. of the bill of lading ; but if A. retains the bill of lading, and notifies B. by letter that he has shipped the property for him in pursuance of the agreement, or if in any other manner the intent thus to ship is evinced, the title passes as effectually, as between them, as if the bill of lading had been delivered.

Where, therefore, goods are so shipped, and the carrier receipts for the same, and agrees to transport safely and deliver to B., the former is chargeable with knowledge of the rights of the latter, and if by the subsequent direction of A. he delivers the goods to another person, he is liable to B. for a conversion thereof.

(Argued February 29th, 1872; decided April 2d, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, affirming a judgment in favor of plaintiffs entered upon a verdict.

Action for the conversion of eleven cases of dry goods.

On the 13th October, 1866, plaintiffs received in New York, from Alden, Frink & Western of Cohoes, an invoice of three cases of goods, consigned to plaintiffs on account of consignors by the defendant's road. Plaintiffs advanced thereon three-fourths of their value, and at the same time loaned Alden, Frink & Western $3,974.13, for which that firm gave their check payable a few days ahead. The check not being paid, it was agreed that Alden, Frink & Western

should ship to plaintiffs, to pay the debt, eight more cases of goods. Invoices were sent to plaintiffs, stating the goods were consigned to plaintiffs on account of the consignors.

On the 16th and 17th of October, all the eleven cases were consigned to plaintiffs, and delivered to defendant's agent at Troy, to be by defendant transported to plaintiffs, the defendant at the time giving its receipt, promising and agreeing therein to transport and deliver the goods to plaintiffs, at New York. Instead of delivering the goods to plaintiffs, defendant, without requiring the surrender of its receipts, allowed Mr. Frink, unbeknown to his firm, to change their destination, and, in pursuance of his order, the goods were delivered to Albert Jewett & Co., of New York city, by whom they were sold, and the proceeds paid over to Frink.

The firm of Alden, Frink & Western were at this time insolvent. Plaintiff demanded the goods of defendant's agent in New York. The court, under exceptions of defendant, ordered a verdict for the plaintiffs for the value of the goods.

*T. R. Strong* for the appellant. The bill of lading and the invoice are the ordinary evidence of property. (*The Sallie Magee*, 3 Wall., 451; *Blagg* v. *Phœnix Ins. Co.*, 3 Wash. C. Ct., 5; 17 How., 100.) A simple consignment only shows that consignee is constituted agent of owner to receive and sell. (*Conard* v. *A. Ins. Co.*, 1 Pet., 444; 7 Cow., 328; 2 Hill, 151, 152.) A bill of lading may be explained by parol. (*Grosvenor* v. *Phillips*, 2 Hill, 151, 152, per COWEN, J.; 1 Durn. & East, 745, 746 and note; *The Bank of Rochester* v. *Jones*, 4 Comst., 500, 501; *Price* v. *Powell*, 3 id., 322 325; *Sweet* v. *Barney*, 23 N. Y. R., 335; 2 Wash. C. Ct., 283.) "Where goods are sent upon the account and risk of the shipper, the delivery to the master is a delivery to him as agent of the shipper, and it is competent to the consignor, at any time before actual delivery to the consignee, to countermand it, and thus to prevent the consignee's lien from attaching. (*The Frances* [Irvin's claim], 8 Cranch, 418–420; see note, 3 Cond. Rep. S. C. U. S., 245; *Ryberg* v. *Snell*, 2

Wash. C. Ct., 403; *The Frances,* 2 Gall., 391; *The Bank of Rochester* v. *Jones,* 4 Comst., 500, 501; *Conard* v. *The Atlantic Ins. Co.,* 1 Pet., 444, 445, and cases cited in last two cases; *Western Trans. Co.* v. *Hawley,* N. Y. Com. Pleas, 1 Daly, 327; Abb. on Shipping [7th Am. ed.], 433; *Grove* v. *Brien,* 9 How. U. S. R., 429, 439.) Under general consignments, consignor can, at any time before bill of lading is delivered to consignee, revoke consignment. (*Dows* v. *Cobb,* 12 Barb., 310; *W. T. Co.* v. *Hawley,* 1 Daly, 327; *Mitchell* v. *Ede,* 11 A. & E., 888.) No lien attached until goods came to plaintiff's possession. (*Ryberg* v. *Snell,* 2 Wash. C. Ct., 291.) There was no such sale and delivery of the goods as would satisfy requirements of the statute of frauds. (*Shildler* v. *Houston,* 1 Cow., 261; *Rogers* v. *Phillips,* 40 N. Y., 519.) The evidence failed to establish a conversion. (*Andrews* v. *Shattuck,* 32 Barb., 396; *Whitney* v. *Slanson,* 30 id., 276; *Latimer* v. *Wheeler,* id., 485; *Bridenbecker* v. *Lowell,* 32 id., 9; *Booth* v. *Bierce,* 40 id., 114; *The Union Bank* v. *Mott,* 39 id., 180; *Tolano* v. *National Steam Navigation Co.,* 5 Robt., 388.)

*Samuel Hand* for the respondents. Defendant, as common carrier, having received the goods to deliver to plaintiffs, the delivery to a wrong person was a conversion. (*Hawkins* v. *Hoffman,* 6 Hill, 586; *Stephens* v. *Elwell,* 4 Maule & Selw., 259; *McEntee* v. *N. J. Steamboat Co.,* 45 N. Y., 49; *Youl* v. *Harbottle,* Peake's Cases, 49; *Devereaux* v. *Barclay,* 2 Barn. & Ald., 702; *Stevenson* v. *Hart,* 4 Bing., 476; *Sabbock* v. *Ingalls,* 1 Stark R., 104; *Holbrook* v. *Wright,* 24 Wend., 169; *Esmay* v. *Fanning,* 9 Barb., 189; Story on Bailment, 414; *Boyce* v. *Brockway,* 31 N. Y., 490.) The invoicing the goods to plaintiff was in itself a transfer of title. (*Grosvenor* v. *Phillips,* 2 Hill, 147; *Holbrook* v. *Wright,* 24 Wend., 168; *Hailee* v. *Smith,* 1 Bos. & Pull.; and see *Vertue* v. *Jewell,* 4 Campb., 31, 33; Goss on Liens, 253; 5 Maule & Selw., 350; 9 East, 506; *Anderson* v. *Clark,* 2 Bing., 300; *Gardiner* v. *Holden,* 2 Pick., 599.) There was

a delivery and acceptance by plaintiffs. ( *Woodford* v. *Patterson*, 32 Barb., 630; *Dixon* v. *Buck*, 42 Barb., 70; *Gray* v. *Davis*, 10 N. Y., 285.) Shipping goods to one who has ordered them is a completed sale, *vesting* the property in the consignee, and is a constructive delivery. ( *Waldron* v. *Romain*, 22 N. Y., 368; *Daws* v. *Peak*, 8 T. R., 330; *Dutton* v. *Solomon*, 3 Bos. & Pull., 582; *Buckley* v. *Furniss*, 17 Wend., 504; *Covell* v. *Hitchcock*, 23 Wend., 48; *Brown* v. *Hodgson*, 2 Camp., 36; *Evans* v. *Marlett*, 1 Ld. R., 27; *Stanton* v. *Edgar*, 16 Pick., 467; *Hart* v. *Satterly*, 3 Campbell, 528; *Bushnell* v. *Wheeler*, 15 Queen's Bench, 442; *Kay* v. *Colesworth*, 14 Eng. Law & Eq. R., 434; *Ludlow* v. *Bowne*, 1 Johns. R., 15, 16; *Potter* v. *Lansing*, id., 215; *Fitzhugh* v. *Winan*, 9 N. Y., 559; BUTLER, J., in *Ellis* v. *Hunt*, 3d Term; see, also, the case of *Coxe* v. *Hardin*, 4 East, 211, and *Cross* v. *O'Donnell*, 44 N. Y., 661; *The People* v. *Hagner*, 14 Wend., 546; *Dyer* v. *Forrest*, 2 Abbott, 282; *Hayne* v. *Porter*, 3 Hill, 141; and see the case of *Stafford* v. *Webb*, Hill & Denio's Supp., 213; *Cross* v. *O'Donnell*, 44 N. Y., 661.) Where the facts show intent to pass the title, the mere fact that bill of lading is taken in name of seller, and is unindorsed, will not prevent its passing. ( *Joyce* v. *Swann*, 17 C. B. U. S., 84; *Wait* v. *Baker*, 2 Exch., 1; *Brown* v. *Hare*, 2 Halst., 822.) Mere possession of personal property is not evidence of ownership. ( *Spraight* v. *Hawley*, 39 N. Y., 445.) It is no defence that defendant acted upon the authority of Frink. ( *Stephens* v. *Elwell*, 4 M. & S., 259; see, also, *McCombee* v. *Davis*, 6 East, 358; *Baldwin* v. *Cole*, 6 Mod., 212, and *Perkins* v. *Smith*, 1 Mills, 328.) The consignee is the presumptive owner, and the common carriers must deliver to him or order. (23 N. Y., 337; *Frise* v. *May*, 3 East, 93; *Edwar* v. *Brown*, 2 Mees. & Welsh., 375; *Bryant* v. *Mix*, 4 Mees. & Welsb., 775, 791.) By signing the shipping bill, the carrier becomes bailee for the consignor or *consignee*, according to the rights of property *as between them*. ( *Dows* v. *Green*, 16 Barb., 72; *Adams* v. *Bissell*, 28 Barb., 382.)

CHURCH, Ch. J. It is undisputed that Alden, Frink & Weston delivered the goods in question to the defendant, to be transported by them to the plaintiffs; that they were consigned to the plaintiffs, and the packages properly marked with the name of the plaintiffs' firm, and the defendant gave a receipt for the same, agreeing to deliver the goods safely to the plaintiffs at the city of New York. It is also undisputed that the plaintiffs had made a specific advance upon a portion of the goods, and the remainder were shipped in pursuance of an agreement between the plaintiffs and Alden, Frink & Weston, to pay for money borrowed by the latter of the former a few days previous, and that invoices of all the goods, stating the consignment and shipment by the defendant's railroad, had been forwarded to the plaintiffs by mail. This was substantially the condition of things on the 17th of October, when one of the members of the firm of Alden, Frink & Weston, for his individual benefit, but in the name of his firm, changed the destination of the goods, and the defendant delivered them in pursuance of such changed destination to another person. The question is whether the title had vested in the plaintiffs. I think it had. It is clear that the consignors delivered the goods to the carrier for the plaintiffs in compliance with their contract to do so. The parol contract was thereby executed, and the title vested in the plaintiffs. The plaintiffs occupied the legal position of vendees after having paid the purchase-money and received the delivery of the goods. But it is unnecessary, in order to uphold this judgment, to maintain that the plaintiffs occupied strictly the relation of vendees. The legal rights of a vendee attach when goods are shipped to a commission merchant, who has made advances upon them in pursuance of an agreement between the parties. Such an agreement may be either inferred from the circumstances or shown by express contract. (*Holbrook* v. *Wight*, 24 Wend., 169; *Haille* v. *Smith*, 1 Bos. & Pul., 563.) In the latter case, EYRE, J., said: "From the moment the goods were set apart for this particular purpose, why should we not hold the property in them to

have changed, it being in perfect conformity to the agreement and such an execution thereof as the justice of the case requires." The same principle has been repeatedly adopted. (*Grosvenor* v. *Phillips*, 2 Hill, 147.)

It must appear that the delivery was made with intent to transfer the property. Until this is done the parol agreement is executory, the title remains in the consignor, and he has the power to transfer the property to whomsoever he pleases, and render himself liable for the non-performance of the contract. It is urged by the counsel for the defendant that no bill of lading was forwarded or delivered to the plaintiffs, and that until this was done the title remained in the consignors. This is undoubtedly true in many cases; but it is mainly important in characterizing the act of the shipper, and showing with what purpose and intent the goods were delivered to the carrier. If A. has property, upon which he has received an advance from B. upon an agreement that he will ship it to B. to pay the advance or to pay any indebtedness, he may or may not comply with his contract. He may ship it to C. or he may ship it to B. upon conditions. As owner he can dispose of it as he pleases. But if he actually ships it to B. in pursuance of his contract, the title vests in B. upon the shipment. The highest evidence that he has done so is the consignment and unconditional delivery to B. of the bill of lading. If the consignor procures an advance upon the bill of lading from a third person, or delivers or indorses the bill of lading to a third person for a consideration, it furnishes equally satisfactory evidence that the property was not delivered to the consignee, for the simple reason that it was delivered to some one else. But I apprehend that if a consignor who had made such an agreement retained in his own possession a duplicate of the bill of lading, and notified the consignee by letter that he had shipped the property for him in pursuance of the agreement, or in any other manner the intention thus to ship it was evinced, the title would pass as effectually, as between them, as if he had forwarded the bill of lading. The question whether a subsequent indorsee

of the bill of lading for a valuable consideration could acquire any rights against the consignee, is not involved. As against the consignor the delivery of the property to the carrier, with intent to comply with his contract, vests the title in the consignee. It is largely a question of intention. In *Mitchell* v. *Ide* (39 C. S. R., 260), cited by the defendants, Lord DENMAN said : " The intention of Mackenzie to transfer the property to the plaintiff is unquestionable, and we think that under the circumstances he has carried that intention into effect." And in *The Bank of Rochester* v. *Jones* (4 N. Y., 501), this court said : " When the bill of lading has not been delivered to the consignee, *and there is no other evidence of an intention* on the part of the consignor to consign the specific property to him, no lien will attach." In that case the bill of lading was not only not sent to the consignee, but was transferred to the plaintiffs and money borrowed upon it, and there was no evidence of an intention to consign the flour to the defendant except upon the condition of paying the money so borrowed. It should be observed also that in that case there was no agreement to consign the property to the defendant as security, or in payment of the indebtedness due him from the consignor. Such an agreement, either express or implied, is important, although not conclusive, in showing the intent with which the act was done. In this case there was no other bill of lading than the receipt produced in evidence, and no duplicate was taken ; but the intention of Alden, Frink & Weston to transfer this specific property to the plaintiffs, to be applied upon their indebtedness, conclusively appears by the undisputed evidence. 1. By the agreement the day prior to the shipment. 2. By forwarding invoices of the shipment to the plaintiffs. 3. By making the shipment unconditionally. 4. By retaining the receipt given by the defendant, and neither making or attempting to make any use of it.

These acts were so unequivocal of an intention to transfer the property to the plaintiffs that there remains no room for doubt. The moment these acts were done, the title vested in

the plaintiffs, and the consignors were powerless to interfere with the property.

The recent case of *The Cayuga County National Bank* v. *Daniels* (not reported) was decided against the consignees upon the distinction above referred to. It was held in that case that the consignors did not deliver the property to the carrier with the intention to vest the title in the defendants, except upon condition of paying a draft discounted by the plaintiffs, and that the bill of lading was delivered upon that condition, and that on the defendants' refusal to comply with the condition, they acquired no right or title to the property, and that the case therefore came within the principle of the *Bank of Rochester* v. *Jones* (*supra*). Here the intention to vest the title is clear and plain. It is urged that the words " on our account," in the invoices, evinced an intention not to vest the title in the plaintiffs. They can have no such effect in this case, even if standing alone and unexplained they might have. A bill of lading for which, as between the parties, the invoices were a substitute, can always be explained by parol. It may be shown by parol to have been intended as evidence of an absolute sale, a trust, a mortgage, a pledge, a lien or a mere agency. (2 Hill., 151; 4 N. Y., 501, and cases cited.) The actual agreement and transaction will prevail, and it was proved by two of the members of the firm, and uncontradicted, that the goods were in fact shipped in pursuance of the agreement. Besides, these words are not necessarily inconsistent with the agreement. The goods were not purchased absolutely by the plaintiffs at a specified price, but were to be sold and the avails applied. The relation of the plaintiffs was more nearly that of trustee, having the title, and bound to dispose of the property and apply the proceeds in a particular manner, and the consignors were the *cestuis que trust*, having the legal right to enforce the terms of the agreement for their benefit. In this sense the property was shipped on their account, and the agreement is consistent with the meaning of those words. The statute of frauds has no application. 1st. There was no sale. 2d. If there was,

the consideration was paid. 3d. The property was specified when the agreement was made as being that which had been and was then being shipped, and the plaintiffs agreed to accept that particular property, and the subsequent delivery to the carrier agreed upon was in legal effect a delivery to the plaintiffs. (*Cross* v. *O'Donnell*, 44 N. Y., 661; *Stafford* v. *Webb*, Lalors, Sup., 217.)

The defendant is liable for a *conversion* of the property. It had receipted the property and agreed to transport safely, and deliver it to the plaintiffs. Instead of complying with its contract, it delivered the property to another person by the direction of one who had no more legal authority over the property than a stranger, without the return even of its receipt. The plaintiffs had vested rights which the defendant was bound to respect, and with a knowledge of which it was legally chargeable. (45 N. Y., 49; 6 Hill, 586; 24 Wend., 169; Story on Bailment, 414; 31 N. Y., 490.) It was its duty to deliver the property to the real owner. (45 N. Y., 34.)

Judgment affirmed with costs.

All concur.

Judgment affirmed.